ᴜAsa D. Gove *v.* James W. Breedlove.

The powers conferred on the Supreme Court, enable it to supervise the legal opinions and judgments of the inferior Judges. They do not extend to the correction of any intemperate language in which they may be expressed, or to the personal deportment of the Judges, while presiding in their respective courts.

A Judge has no right, in the capacity of clerk to the jury, even at their request, to draw up a verdict for them. He may instruct them as to the form of their verdict. (C. P. 515, 528;) but it is the duty of the foreman to prepare it. Ib. 524. The Judge may tell them, that it is in their power to find either a general, or a special verdict, but it is for them to determine which they will find. Ib. 519, 521, 524.

In a charge to the jury, the Judge must limit himself to giving them a knowledge of the law applicable to the case, abstaining from saying any thing about the facts, or even recapitulating them in such a way as to exercise any influence on their decision. Nor ought he to state his own conclusions from the evidence.

An action to recover a drawback due on certain articles subject to an import duty, and for the value of merchandize detained from the plaintiff, is not an action for the recovery of damages for an offence or quasi-offence, in the meaning of the third section of the act of 14th March, 1839, ch. 17, establishing the Commercial Court of New Orleans ; but is within the jurisdiction of that court. C. C. 2294 to 2304.

The 4th section of the act establishing the Commercial Court of New Orleans, so far as it attempts to authorize the Supreme Court to decide on cases in the first instance, and to determine matters not³ decided on in the inferior court, is unconstitutional. The Supreme Court cannot decide on the merits of a case which has not been acted on by the lower court.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND,˙ J.   This action is brought to recover the value of seventy-two barrels of Malaga wine, which the plaintiff alleges

that the defendant, as the collector of the port of New Orleans, detains from him, and also the sum of $167 50, which he owes him for duty on salt, that was entered subject to draw-back, which sum the defendant refuses to pay, although directed to do so by the Secretary of the Treasury, to whom the question was presented for decision. His whole demand amounts to $743 50. The defendant excepts to the action being now maintained against him, in relation to the duty on the salt, because, as he avers, the plaintiff claims the same sum of the United States, in a suit pending in the District Court of the United States, in which he is sued on a bond for certain duties. He further avers, that there are, as he believes, in the custom house stores in New Orleans, the number of barrels of wine claimed by the plaintiff, which, he is informed, belongs to him, and which he has no objection to his taking, whenever he complies with the law, and the rules and regulations of the custom house.

The cause was tried by a jury, who, under the particular instruction of the court, found a special verdict in relation to the claim for debenture on the salt exported, declaring that the plaintiff was entitled to it, provided he would, "at the request of defendant, tender at the custom house, the necessary entries in the past tense, and transfer his claim on the government to the defendant." In relation to the claim for the wine, the jury found, that the plaintiff had, on the 16th of January, 1837, given two bonds, payable at three and six months, to secure the payment of the duties, the first of which was paid, and the second was not ; and that suit had been instituted on the latter, in the United States Court. That after the second bond became due, the plaintiff demanded the wine, which the defendant refused to deliver, until the duties and charges were paid, which has not been done. The jury then proceed to say, if, upon this state of facts, the court should be of opinion, that they ought to find for the plaintiff, then they find for him $576, the value of the wine ; but if the court should be of opinion, that they ought to find for the defendant, then they give a verdict for him. It appears from the record, that the jury had some difficulty in coming to a conclusion; whereupon, the judge recommended to them to find a special verdict,

and it seems, he wrote it himself, after which, it was signed by the foreman.

The plaintiff moved for a new trial :

*First*, Because the verdict is in the handwriting of the judge, instead of being written by the foreman of the jury.

*Second*, Because the verdict is not final, and cannot be executed, nor any judgment given thereon.

*Third*, That it is contrary to law and evidence.

The defendant, for answer to the application for a new trial, consented to it, without admitting in any way, the right of the plaintiff to recover.

Upon this motion, the Judge of the Commercial Court stated, at considerable length, his views of the case, and gave the reasons why he " acted as the clerk of the jury, in reducing the verdict to writing." He concludes by saying, that as " both parties ask a new trial, and although I think the suit can be perfectly well settled on the present verdict, yet, as they have not appreciated my efforts to bring the matter to a conclusion, and as they seem disposed to wrong each other, they may have my leave to do it ; but as I am not disposed to waste my time, and have my temper tried again, as the suit does not belong to the jurisdiction of the court, being brought on a *quasi delit*, I shall *ex officio* order its dismissal." Whereupon a judgment was rendered, dismissing the case at the costs of the plaintiff, and ordering it to be re-transferred to the District Court, from whence it had been removed. From this judgment the plaintiff has appealed.

The counsel for the plaintiff has called on us, to express our strong disapprobation of the course pursued by the Judge below on this trial. This it is not proper for us to do. Our jurisdiction extends only to a supervision of the legal opinions and judgments of the inferior Judges, and not to the correction of the intemperate language in which they express them, or to their personal deportment whilst presiding in their courts. Whilst we regret the occurrence of such exhibitions, it is not for us to censure those, whose forbearance is often put to severe tests.

We are of opinion, that the Judge had no right to act in the capacity he did for the jury. He had a right to tell them, that it was within their power to find a general, or a special verdict, in

compliance with articles 519, 521, 524, of the Code of Practice ; and it was the duty of the foreman to prepare it. The law guards, with peculiar vigilance, against all attempts to influence the verdicts of juries. The judge may instruct the jury as to the form of giving their verdict, Code of Practice, arts. 515, 528 ; but he should be very cautious in meddling with the facts of the case. Article 516, of the Code of Practice, declares, that in his charge, the Judge must limit himself to giving the jury a know-ledge of the law applicable to the case submitted to them, and abstain from saying any thing about the facts, or even recapitula-ting them, in such a way as to exercise any influence on their decision. This court have said, that the Judge ought-not to state what conclusions he draws from the evidence. 7 Mart. N. S. 136. It is the duty of the jury to decide, whether they will give a general or special verdict.

We think the Judge erred in dismissing this case on the ground of want of jurisdiction. The act of the Legislature creating the Commercial Court, gives it concurrent jurisdiction with the Pa-rish Court of New Orleans, except in specified cases, one of which exceptions is, " of suits for the recovery of damages for offences or quasi-offences." B. & C. Dig. p. 234, sec. 1. The Judge considered the case as coming within this exception, and dismissed it from his court. The idea that the court had no ju-risdiction, does not seem to have originated with either of the par-ties to the suit, or to have occurred to the Judge, until he as-certained that his course did not satisfy either of them. We do not think, that the present is an action founded upon any of the articles of the code, relating to offences or quasi-offences. Civil Code, arts. 2294 to 2304. One part of the claim is for money re-ceived of the plaintiff illegally, or through error, which creates an obligation to repay it; the other is, to recover the value of proper-ty upon which the defendant alleges there is a lien in favor of the United States. It is not pretended that the plaintiff has sustained any damage in his person, or property, by the fault or tortious act of the defendant.

The counsel for the plaintiff contends, that, if we are of opin-ion that the Commercial Court has jurisdiction of the case, we

ought at once to give a judgment on the merits, and only remand the cause to have it executed. He refers us to the 4th section of the act creating the Commercial Court, (B. & C.'s Dig. p. 235,) which declares, that "no judgment rendered in said court shall be void for want of jurisdiction : but in case a plea be filed to the jurisdiction, and the same is either sustained or overruled by the court, or that the Judge shall *ex officio* decline jurisdiction, and an appeal be taken, the court to which the appeal is made, shall be bound to decide the question ; and in case it be determined that the court had not jurisdiction of the case, the plaintiff shall be condemned by the appellate court to pay all costs of the court of the first instance, even although a judgment in the Supreme Court, may be rendered in his favor." This extraordinary provision is peculiar to the Commercial Court, and, if we understand it correctly, requires of us, in certain cases, to give a judgment, and order it to be carried into execution, by a court, which we may, at the same time decide, has no jurisdiction of the cause. It is not material to analyze this section now, as it is very clear it can not give us authority to decide cases in the first instance, and determine upon issues and points not decided in the inferior court. We can correct the judgments of the inferior tribunals ; but we cannot decide on the merits of a case which has not been acted on by the lower court. The constitution forbids such an assumption of authority. There is another insuperable objection to our giving a final judgment. The correctness of the verdict of the jury, is assailed by the plaintiff and defendant, and the verdict itself has been annulled, so that we have no ascertained facts on which we can give a decision.

The judgment of the Commercial Court is annulled and reversed and the cause remanded for a new trial, to be proceeded in according to law ; the appellee paying the costs of this appeal.

*Carter,* for the appellant.

*T. Slidell,* for the defendant,